**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MELISSA ROSA,               )
                                   )
        Plaintiff,        )
                                   )
        v.                 )      No. 18-CV-8477
                                   )
THE BOARD OF TRUSTEES OF THE )      Judge John J. Tharp, Jr.
UNIVERSITY OF ILLINOIS, and    )
AARON M. MURAUSKAS.       )
                                   )
        Defendant.      )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Melissa Rosa sued her employer, the Board of Trustees of the University of Illinois ("Board"), and Aaron M. Murauskas, a Sergeant with the University of Chicago-Illinois Police Department ("UIC PD"), under federal and state law for sexual harassment, discrimination, and retaliation. The defendants move to dismiss the complaint against them in its entirety. For the reasons discussed below, the defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

For the purposes of this motion, the court accepts all of the plaintiff's fact allegations as true and draws all reasonable inferences in her favor.[1] *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). The Board of Trustees of the University of Illinois governs the UIC PD as well as the University of Illinois's Office of Access and Equity ("OAE"). *Id.* ¶ 8. Rosa began working as a police officer for the UIC PD in May 2016. Compl. ¶ 12, ECF No. 6. Sergeant Aaron M. Murauskas also works as a UIC PD police officer. *Id.* ¶ 11.

---

[1] The facts are as set forth in the Amended Complaint, ECF No. 6. References to "the complaint" are to the Amended Complaint.

This case arises from Rosa's allegations that Murauskas sexually harassed her during the period of May 2017 and February 2018. Rosa alleges that in November 2015, before Murauskas began harassing her, the Board had received a complaint from another UIC police officer alleging that Murauskas had violated a variety of laws and UIC PD rules, including the harassment of another police officer's wife at a Christmas party. *Id.* ¶ 15.

The alleged sexual harassment of Rosa began at a training event with other officers in May 2017, during which Murauskas made unwelcome sexual advances and remarks to Rosa. *Id.* ¶ 16, 17. Following the training, Murauskas issued Rosa a write-up for arriving late. *Id.* ¶ 18.

In the incident at the core of this case, on August 24, 2017, Murauskas directed Rosa to accompany him on a patrol ride. *Id.* ¶ 20. During the ride, Rosa alleges, Murauskas launched into a volley of sexually explicit and offensive comments (including that she did not have a problem "getting fucked," "could get fucked whenever [she] want[ed]" and "with lips like [hers], [he] knew [she] could suck a really good dick"). *Id.* Murauskas then grabbed Rosa's hand and placed it on his pants over his groin. *Id.* He attempted to hold her hand there as Rosa pulled it away. *Id.* According to Rosa, after shouting at him and protesting his advances, Murauskas laughed and told her "to stop acting like [she] had never sucked dick at work before and one more wouldn't kill [her]." *Id.* Rosa contends that Murauskas threatened to have a lieutenant write her up and suspend her if she refused. *Id.* Rosa told him to stop, asked him to never to speak to her like that again, and requested that he drop her off at the police station. *Id.* Murauskas stated that she was not going anywhere. *Id.* As she cried, he warned her that he would make sure she was fired if she told anyone about this incident. *Id.*

Fairly read, the complaint alleges that, as a means of coercing Rosa to comply with his advances or not report them, Murauskas threatened to, and did, submit unwarranted reports of rules

violations. Beyond the May 2017 write-up for being late, the complaint alleges that in October 2017, Rosa was suspended for five days due to an out-of-uniform violation. *Id.* ¶ 25. The complaint does not, however, allege that Murauskas had anything to do with this discipline, which was based on an incident that occurred in "early August 2017," presumably before the August 24, 2017 patrol ride. In another encounter with Murauskas in December 2017, he implied that Rosa's purple hair was a violation of department rules and told her that "she could still do it any time" if she wanted to stop worrying about write-ups. *Id.* ¶ 26.

One month later, Rosa filed a formal complaint with the Board charging Murauskas with battery, sexual abuse, official misconduct, and sex harassment. *Id.* ¶ 27. In turn, the Board directed the OAE to investigate. *Id.* ¶ 29. Rosa asserts that the OAE performed an inadequate investigation by failing to interview relevant witnesses, not following up on relevant information, and inaccurately reporting information that supported Rosa's complaints. *Id.* ¶ 30. The complaint does not allege, however, that the Board directed the OAE to perform a shoddy investigation or otherwise interfered in any way with the investigation; neither does it identify with any specificity who should have been interviewed or what errors the investigators made. Rosa reported another incident with Murauskas to the OAE in February 2018, alleging that he had stared her down intimidatingly in the basement at work and "looked like he wanted to hurt" her. *Id.* ¶ 32. The complaint alleges that in response to these complaints, the defendants engaged in further discrimination, harassment and retaliation, including the denial of training, a transfer request, and additional unwarranted discipline. The complaint identifies no specific disciplinary or employment action taken by the defendants against Rosa as the result of this complaint. It does allege, however, that in response to Rosa's formal complaint, Murauskas filed a defamation suit against her in state court. *Id.* ¶ 34.

3

In March 2018, the OAE issued its findings that Murauskas had not violated the sexual misconduct policy.[2] *Id.* ¶ 32. Six months later, on September 20, 2018, Rosa filed her first charge of harassment, discrimination, and retaliation with the local district EEOC office. ECF No. 15-1. The EEOC issued a dismissal and notice of right to sue letter, stating that it was unable to conclude whether any statutory violations had taken place. ECF No. 15-2.

On December 26, 2018, Rosa submitted a second, and substantially more detailed, charge to the EEOC. ECF No. 15-3. That same day, Rosa filed this suit against the Board. ECF No. 1. This Court granted the defendants' motion to stay, pending the EEOC's investigation of Rosa's second charge. ECF No. 17. On May 8, 2019, the EEOC issued Rosa a second right to sue letter, informing her that it would not be able to investigate her charge within 180 days.[3] ECF No. 19-1. Consequently, this Court lifted the stay. ECF No. 21. Currently pending before the Court is the defendants' motion to dismiss.

---

[2] The OAE report is not included with the complaint and has not otherwise been included with the briefing of the motion to dismiss.

[3] An EEOC charge and subsequent right to sue letter are prerequisites to filing suit, and the complaint's factual allegations must relate to those in the initial EEOC charge. *Moses v. U.S. Steel Corp.*, 946 F. Supp. 2d 834, 841 (N.D. Ind. 2013). While the plaintiff has 90 days to file suit after receiving the EEOC right to sue letter, she also has the right to amend her EEOC charge "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b); 1601.28(e)(1). Here, Rosa filed suit within 90 days of receiving the EEOC's right to sue notice in response to her first charge. Her second EEOC charge fleshes out the allegations of sexual harassment, discrimination, and retaliation. These additional facts amplify the first charge's claims. The second charge also alleges the earliest date of discrimination to have been May 2017 and denotes it as a continuing action. Courts have recognized such date changes as valid amendments to an initial EEOC charge. *See Motoyama v. Hawaii Dep't of Transp.*, 864 F. Supp. 965, 974 n.6 (D. Haw. 2012) (recognizing the changed date of the violation in the second EEOC charge as the operative one); *Lauro v. Tomkats, Inc.*, 9 F. Supp. 2d 863, 869-70 (M.D. Tenn. 1998) (noting that plaintiff would have marked an earlier date in her amended EEOC charge had she sought to pursue earlier discriminatory actions in her federal case). Rosa properly amended her first charge, and the second EEOC charge therefore serves as the operative one for purposes of this motion.

## DISCUSSION

It is necessary at the outset to address two general points that color the assessment of whether the complaint alleges plausible claims for relief. First, the distinction between "claims" and "counts" must be recognized. Rosa's complaint asserts twelve "counts." Pleading in counts is permissible (see Fed. R. Civ. P. 8(d)(2) and 10(b)), but doing so "tends to obscure the critical difference between 'claims,' which explain the plaintiff's grievance and demand relief, and 'counts,' which describe legal theories." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 996 (N.D. Ill. 2013). See also *Toney v. Quality Res., Inc.*, No. 13 C 42, 2017 WL 2868757, at *2 n.3 (N.D. Ill. July 5, 2017) (lamenting "the too-frequently-encountered practice of carving [a] federal claim for relief into multiple counts that, as in the state court "cause of action" practice, set out different theories of recovery, despite the fact that Fed. R. Civ. P. 10(b) (the section that expressly defines the use and scope of counts in federal practice) does not provide for such usage."). The federal rules permit dismissal based on failure to state a claim, but "they provide no basis for striking individual legal theories." *Zurbriggen v. Twin Hill. Acquisition Co.*, 455 F. Supp. 3d 702, 719 (N.D. Ill. 2020) (internal quotations omitted). To the extent that any viable legal theory exists to support a claim, that claim will survive a motion to dismiss. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements [of a claim], the pleading is sufficient if any one of them is sufficient."). To prevail on a motion to dismiss a claim, then, a defendant must demonstrate that there is no legal theory under which the claim plausibly entitles the plaintiff to relief.

Here, Rosa's facts present four principal claims, or grievances, for which she seeks relief. She maintains that: Murauskas is liable to her for his conduct during the patrol ride on August 24, 2017; the Board and Murauskas are liable because she was subjected to sexual harassment and a hostile work environment based on the patrol ride and other allegedly harassing conduct; the Board

and Murauskas discriminated against her because she is a woman; and because of the acts allegedly taken by the defendants in retaliation for reporting sexual harassment and discrimination to the Board. In the twelve counts of the amended complaint, Rosa identifies federal and state theories of liability to support these claims: (1) hostile work environment in violation of Title VII against the Board; (2) sex discrimination in violation of Title VII against the Board; (3) retaliation in violation of Title VII against the Board; (4) retaliation in violation of the Illinois Ethics Act against the Board; (5) gender discrimination in violation of the Illinois Civil Rights Act against the Board; (6) retaliation in violation of the Illinois Ethics Act against Murauskas; (7) sexual harassment, battery, discrimination, and retaliation in violation of Section 1983 against Murauskas; (8) battery under Illinois law against Murauskas; (9) violation of the Illinois Gender Violence Act against Murauskas; and (10) intentional infliction of emotional distress against Murauskas. Rosa further alleges that the Board is vicariously liable for Murauskas's misconduct under state law based on the doctrine of respondeat superior (Count XI) and a state indemnification statute (Count XII). Because the focus of a motion to dismiss under Rule 12(b)(6) is on the plaintiff's claims rather than her legal theories, the Court will address the viability of these theories in the context of the claim to which they relate.

The parties' briefing also reveals a profound disagreement about the pleading standard applicable in employment discrimination cases. The overarching argument that pervades the defendants' briefs is that the complaint fails to plead sufficient facts to state any viable claim for relief. Citing the Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009), the defendants argue that "numerous critical allegations, without which most of plaintiff's claims cannot proceed, are conspicuously missing and that many of the allegations plaintiff does make are nothing more, and

often a good deal less than, mere labels, conclusions or claim element recitals." Def's Mem. at 3, ECF No. 29. The defendants argue, for example, that the complaint lacks specific allegations that Rosa did not commit violations for which she was written up or disciplined, fails to allege facts showing that Murauskas was her supervisor, or played any role in meting out such discipline.

For her part, Rosa invokes Seventh Circuit case law holding that in employment discrimination cases, a plaintiff need only allege that the defendant took an adverse employment action against the plaintiff on the basis of a protected characteristic or because of her protected activity. The Seventh Circuit has repeatedly held that to prevent dismissal under Rule 12(b)(6), a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected characteristic]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *see also, e.g.*, *Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019) (in an employment discrimination case, "a plaintiff need plead only the type of discrimination, when it occurred, and by whom"); *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) ("The pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom."); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (confirming this "undemanding" pleading standard in employment discrimination cases); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (employment discrimination complaint need only plead the type of discrimination, by whom, and when it occurred); *Tomayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory").

The defendants rail against the plaintiff's contention that she need not plead facts that support each element of her claim, but that is plainly the law in this Circuit. *See*, *e.g.*, *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) ("A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss. Rather, to proceed against the District under § 1983 or Title VII, [a plaintiff] need[] only allege . . . that the [defendant] fired him because of his race."). The Court of Appeals has explained that in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the Supreme Court rejected the proposition that a plaintiff must plead facts establishing a prima facie case and left that holding undisturbed in *Twombly* and *Iqbal*. *See Luevano*, 722 F.3d at 1028. That is not because the *Twombly* Court neglected to consider the decision in *Swierkiewicz*; in *Twombly*; rather, the Court expressly reaffirmed its holding in *Swierkiewicz* as consistent with *Twombly*'s requirements. 550 U.S. at 569-70. The defendants argue that notwithstanding the myriad Seventh Circuit cases affirming the minimal requirements in employment discrimination cases, *Twombly* and *Iqbal* require more—specifically, that the plaintiff must aver discrimination and adverse employment action with "enough details about the subject-matter of the case to present a story that holds together." Reply at 2, ECF No. 45 (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014)). The defendants' argument has some force, and the Seventh Circuit has acknowledged that "there is some unresolved tension between *Swierkiewicz* and the Court's later decisions in *Twombly* and *Iqbal*," *Luevano*, 722 F.3d at 1028, but the Court of Appeals has plainly resolved that tension in favor of a less demanding pleading standard than advocated by the defendants here.

Perhaps the starkest illustration of the point can be found in *Tate*, where the Seventh Circuit reversed the dismissal of an employment discrimination complaint that alleged only:

> I was hired by Defendant on or about August 4, 2014. My most recent position was Driver Trainee. . . . During my employment, I

> was subjected to sexual harassment. I complained to no avail. On September 5, 2014, I was discharged. I believe I was discriminated against because of . . . my sex, male, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

809 F.3d at 345. Suffice to say, if this complaint presents sufficient factual detail to pass muster, the defendants' protests that the Seventh Circuit's repeated statements about the minimal requirements in pleading employment discrimination claims are not to be taken literally and actually require a higher quantum of fact pleading than expressed cannot be accepted. Like the Seventh Circuit, this Court acknowledges that the pleading standard for employment discrimination cases applied in this Circuit is in "tension" with the principles reiterated by the Supreme Court in *Twombly* and *Iqbal*, but this Court is bound to follow the guidance of its Court of Appeals—including its interpretations of Supreme Court precedent. As a district court in the Seventh Circuit, this Court must apply the pleading standard articulated by the Seventh Circuit for employment discrimination cases: it suffices to plead a plausible claim when the plaintiff alleges that she was subject to an identified adverse employment action because of her sex or in retaliation for engaging in protected activity.

**I. The August 24, 2017 "Patrol Ride"**

Rosa asserts several causes of action in support of her claim against Murauskas for his conduct during the patrol ride on August 24, 2017. She alleges that during the ride, Murauskas committed battery under Illinois common law, violated the Illinois Gender Violence Act, intentionally inflicted emotional distress, and seized her in violation of the Fourth Amendment.

### A. Battery (Count VIII)[4]

Rosa's claim based on Murauskas's alleged conduct during the August 24 patrol ride easily states a plausible claim for relief under multiple theories. Most clearly, Rosa brings a count of battery against Murauskas, specifically alleging that Murauskas's physical contact was intentional, offensive, and undertaken in coercive conditions. Battery is "the unauthorized touching of the person of another." *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (applying Illinois law; internal quotations omitted). The allegations of the complaint, taken as true for purposes of this motion, are more than adequate to state a viable claim for battery under Illinois common law.

It bears noting that the Illinois Human Rights Act ("IHRA") does not preempt Rosa's claim to the extent it is based on a battery theory. The IHRA stipulates that "no other court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILC 5/8-111(D). Workplace sexual harassment constitutes a civil rights violation under the IHRA. *Fuesting v. Uline*, 30 F. Supp. 3d 739, 744 (N.D. Ill. 2014). The Illinois Supreme Court has concluded, however, that common law tort claims are not "inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 519, 687 N.E. 2d 21, 24 (1997). Put simply, if the plaintiff does not rely on the IHRA in framing her cause of action, then the two are not inextricably linked. *Torres v. Merck Sharp & Dohme Corp.*, 255 F. Supp. 3d 826, 832 (N.D. Ill. 2017).

---

[4] In Count VII, Rosa also asserts that her claim is viable under Section 1983, but she fails to identify any specific constitutional right implicated by the alleged battery.

Here, Rosa does not rely on the IHRA in her battery count, nor do defendants raise IHRA preemption as a bar. The IHRA therefore does not preempt Rosa's count of battery under Illinois common law, and the defendants' motion to dismiss is denied as to this claim.

### B. Illinois Gender Violence Act (Count IX)

The Illinois Gender Violence Act ("IGVA") provides a cause of action for anyone subjected to gender-related violence or "physical aggression satisfying the elements of battery . . . committed, at least in part, on the basis of a person's sex." 740 ILCS §§ 82/5, 10. Rosa contends that Murauskas violated the IGVA during the August 2017 incident, and defendants do not offer any response to this count. Rosa has made a plausible showing of battery and alleged that she was subjected to forced physical contact based on her sex. This theory, too, sustains Rosa's claim based on the August 24 patrol ride.

### C. Intentional infliction of emotional distress (Count X)

In her final substantive count, Rosa alleges intentional infliction of emotional distress against Murauskas.[5] To prevail on an IIED claim under Illinois law, the plaintiff must demonstrate that the conduct at issue was "truly extreme and outrageous," the defendant "either intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress;" and the conduct "in fact caused severe emotional distress." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1022 (N.D. Ill. 2014) (internal quotations and alterations omitted). Defendants contend that the IHRA preempts this count. Like the battery count, however, IHRA preemption does not present an issue because Rosa did not invoke the IHRA in pleading this count. *See id.* at 1021 ("As numerous courts in this district have

---

[5] Rosa's IIED theory appears to rest primarily on the events during the August 24 patrol ride; accordingly, the Court has assessed the viability of the theory only in the context of that claim.

found, an employer's duty not to commit IIED is independent of its duty under the IHRA to keep the workplace free of unlawful discrimination and harassment.")

Defendants further argue that this count fails because Rosa has not shown extreme and outrageous conduct on Murauskas's part. The case law says otherwise. *See Zuidema v. Raymond Christopher, Inc.*, 866 F. Supp. 2d 933, 941-42 (N.D. Ill. 2011) (finding plaintiff had adequately alleged IIED where defendant's unwelcome physical contact at work, including touching his face and rubbing his shoulders, caused him severe emotional distress); *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1077 (N.D. Ill. 2002) (finding plaintiff's claim of sexual harassment and employer's inappropriate physical touching to meet the "outrageous conduct element of an IIED claim" at the motion to dismiss stage). Rosa alleges simply that Murauskas's conduct was intentional, extreme, and outrageous and caused her severe emotional distress as well as mental and physical pain. At this stage, Rosa's allegations are also adequate to plausibly state a claim for relief against Murauskas based on the events of August 24, 2017.

### D. Section 1983 – Fourth Amendment violation against Murauskas (Count VII)

Rosa alleges that Murauskas violated the Fourth Amendment, enforceable through Section 1983, by "seizing" her in the August 2017 incident. The Fourth Amendment theory adds nothing but clutter to Rosa's claim (it is difficult to imagine that the claim would succeed under the Fourth Amendment while failing under Rosa's other theories) and does not apply in this scenario in any event. As the court noted in *Johnson v. Town of St. John*, the Fourth Amendment is only implicated in sexual harassment cases where the harassment occurred "in the course of a criminal investigation or other form of governmental investigation or activity." No. 2:15-cv-417 JD, 2017 WL 1165210, at *3 (N.D. Ind. Mar. 29, 2017) (collecting cases) (internal citations omitted). Here, the harassment occurred during a patrol ride, during which Sergeant Murauskas did not purport to

act for a governmental or investigatory purpose. His alleged refusal to permit Rosa to get out of the car took place independent of any government-authorized duty and served no governmental purpose. Accordingly, Rosa has not alleged a plausible theory of liability under the Fourth Amendment based on her alleged seizure by Murauskas during the August 24, 2017 patrol ride.

## II. Effect of the Title VII Statute of Limitations

Rosa's remaining claims invoke Title VII, among other potential theories that support liability. Before assessing the viability of these claims under Title VII, however, it is necessary to determine what conduct can be considered in assessing the plausibility of Rosa's claims to the extent that she invokes Title VII to support them. Plaintiffs are required to file an EEOC charge within 300 days of the unlawful employment practice at issue. 42 U.S.C § 2000e-5(e)(1).[6] Rosa filed her first EEOC charge on September 20, 2018. Any unlawful employment practice must therefore have occurred on or after November 24, 2017 to be actionable under Title VII. Murauskas's alleged sexual harassment commenced in May 2017, and the statute of limitations therefore poses a potential obstacle for Rosa's Title VII claims. Most significantly, if the November 24, 2017 date governs, then the alleged assault and seizure in the police vehicle during the patrol ride on August 24, 2017 and the May 2017 training incident must be excluded from Rosa's Title VII arguments.

The statute of limitations is an affirmative defense and as such Rosa was not required to assert facts to defeat it. She does not make that argument, however, and instead addresses the defense on the merits. Rosa argues that the statute of limitations should be tolled under the doctrine

---

[6] The 300-day filing period, rather than 180 days, applies where a state or local agency has authority to address alleged unlawful employment practices. *See* 42 U.S.C § 2000e-5(e)(1). Illinois has such a state agency, the Illinois Department of Human Rights ("IDHR"), and therefore, the 300-day filing period applies. 775 ILCS 5/7-101.

of equitable estoppel. In Rosa's telling, she detrimentally relied on an OAE investigator's advice that filing an EEOC charge would not help, thus delaying her decision to file with the EEOC. The doctrine of equitable estoppel is reserved for situations in which individuals are gravely deterred from filing suit on time. *See Shanoff v. Ill. Dep't of Human Services*, 258 F.3d 696, 702 (7th Cir. 2001) (noting that equitable estoppel only applies when the defendant "takes active steps to prevent the plaintiff from suing in time," such as "hiding evidence or promising not to plead the statute of limitations") (internal quotations omitted). The ambiguous and informal advice Rosa allegedly received from the OAE investigator, however misguided, does not rise to the level required to foreclose the defendant from invoking the statute of limitations. *See, e.g.*, *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997) (employer's advice not to file with the EEOC because of the lengthy process did not equitably estop the employer from invoking the statute of limitations); *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (employer encouraging different avenues for internal review of alleged discrimination is "not the sort of deception that supports equitable estoppel").

An exception to Title VII's 300-day statute of limitations exists, however, for continuing violations in hostile work environment claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Sexual harassment claims may involve a series of discrete incidents that individually would not qualify as actionable claims but taken together form "an actionable pattern of harassing behavior." *Garner v. Nat'l Railway Corp.*, No. 18-cv-3789, 2019 WL 414711, at *3 (N.D. Ill. Feb. 1, 2019). The violation at issue does not need to be continuous, only cumulative. *Morgan*, 536 U.S. at 115. In a hostile work environment claim, a plaintiff may therefore invoke an act in the time-barred period, as long as it relates to actions within the limitations period. *Id.* at 117.

Rosa's hostile work environment claim dates back to May 2017 and includes an alleged incident of physical contact in August 2017, both of which fall outside the filing period. Yet, Rosa also recounts two incidents in December 2017 and January 2018 that contribute to her hostile work environment claim—Murauskas's implication that she could avoid discipline through sexual favors and his intimidating stare down at work, respectively. These two interactions connect to the May and August incidents; indeed, Murauskas's statement in December that "she could still do it any time" seems to refer to the August patrol ride. Although more information is needed on the December and January incidents, at this stage, Rosa has sufficiently alleged that all four incidents constitute a single hostile work environment claim.[7] As a result, the Court will consider incidents prior to the November 24, 2017 cut-off date as relevant to the hostile work environment claim under the continuing violation doctrine. On the other hand, November 24, 2017 remains the limiting date for Rosa's sex discrimination and retaliation claims.

## III. Sexual Harassment

Rosa's second claim expands on her first and is based on the alleged pattern of sexual harassment to which Murauskas allegedly subjected her (including, but not limited to, the August 2017 patrol ride). She alleges that this conduct was so severe and pervasive as to constitute a hostile work environment for which the Board bears responsibility. She further argues that Murauskas is

---

[7] The Seventh Circuit has held that large gaps between incidents may weigh against finding a continuing violation. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017). The more specific a plaintiff's allegations are regarding the incidents, the more likely she is to establish a single employment practice. *Id.* at 713. Rosa has identified specific incidents and the month and year in which they occurred in her complaint. Moreover, the Court finds that the few-month lag between incidents is not sizable enough to be dispositive. *See contra id.* (finding periods of conduct from 2003 – 2009 and 2011 – 2012 too broad and insufficiently detailed to form a single employment practice). The gaps between the alleged harassment incidents do not affect this Court's finding of a continuing violation.

personally liable to her for his harassment under Section 1983. She does not argue that the Board is liable for the alleged harassment under Section 1983.

### A. Hostile Work Environment under Title VII against the Board (Count I)

Rosa alleges that the Board subjected her to a hostile work environment by failing to properly remedy and investigate her sexual harassment complaint. To prevail on a hostile work environment claim, a plaintiff must establish that: "(1) she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005). This showing is a challenging hurdle for plaintiffs to clear: "the workplace that is actionable is one that is hellish." *Id.* at 645 (citing *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)).

Rosa has alleged that Murauskas subjected her to unwelcome sexual advances, including forced physical contact and explicit sexual propositions. Whether this conduct was severe or pervasive enough depends on a number of considerations, including its frequency, how offensive a reasonable person would find it to be, whether it was physically threatening as opposed to verbally abusive, whether it unreasonably interfered with an employee's work, and whether it was specifically directed at the victim. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014). Notably, the conduct need only be severe or pervasive, not severe ***and*** pervasive. *Jackson v. County of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) (finding that "harassing conduct does not need to be both severe *and* pervasive . . . [o]ne instance of conduct that is sufficiently severe may be enough").

Rosa has alleged conduct that is sufficiently severe to state a plausible hostile work environment claim. While Rosa's complaint describes Murauskas's sexual comments and propositions on several occasions, it centers around one instance of forced physical contact and verbal abuse. A single incident of sexual harassment may demonstrate severity, particularly when the conduct is physical and threatening. *Durkin v. City of Chicago*, 199 F. Supp. 2d 836, 850-51 (N.D. Ill. 2002) (deeming single incident not physical or threatening, and therefore not severe, where defendant exposed himself to plaintiff after exiting their shared vehicle). *See contra Fall v. Indiana Univ. Bd. of Trustees*, 12 F. Supp. 2d 870, 879-80 (7th Cir. 1998) (single instance of supervisor groping an employee in his locked office created an actionable hostile environment claim); *Barrett v. Omaha Nat. Bank*, 584 F. Supp. 22, 30 (D. Neb. 1983), *aff'd* 726 F.2d 424 (8th Cir. 1984) (finding one instance of inappropriate touching of plaintiff inside a locked car actionable). Here, Rosa was a passenger in the patrol car—that is, in a confined space—when Murauskas made explicit sexual advances and forcibly placed her hand on his groin.[8] Murauskas refused Rosa's entreaty to take her back to the police station and threatened retaliation if she reported the incident. A reasonable person in this situation would find both Murauskas's physical conduct and verbal comments both threatening and offensive. Rosa contends that Murauskas's harassment impeded her ability to perform at work and caused her emotional injury and apprehension. Further, Murauskas specifically directed his conduct at Rosa in ordering her to accompany him on the patrol, alone. Accordingly, Rosa has made a sufficient plausible showing of the severity of Murauskas's conduct.

---

[8] The defendants' description of Rosa's allegations about this alleged incident as "a very brief physical interaction . . . in which . . . she did not touch any intimate part of Murauskas' body," Reply at 10, is difficult to comprehend, particularly when Rosa expressly alleges that Murauskas "grabbed Melissa's hand and put it on his pants over his groin" and "tried to hold it there." Compl. ¶ 22.

Rosa has also supported the proposition that Murauskas targeted her because of her sex. Where a male employee sexually propositions a female employee, "a reasonable jury could conclude that the harassment was directed at her 'because of her sex,'" as is the situation here. *Quantock v. Shared Marketing Servs., Inc.*, 312 F. 3d 899, 905 (7th Cir. 2002).

Lastly, Rosa proposes a plausible basis for employer liability. She maintains that the Board is liable because Murauskas was her supervisor. If a supervisor perpetrated the misconduct at issue in a hostile work environment action, then the Court can hold the employer vicariously liable. *See Burlington Indus., Inc. v. Ellerth.*, 524 U.S. 742, 745 (1998). Rosa contends that Murauskas was her supervisor because he had the power to order her to perform work assignments, such as accompanying him on patrol rides, to issue her disciplinary write-ups, and to influence more senior officials to take disciplinary action against her. For Title VII purposes, a supervisor is an individual with the "authority to affect the terms and conditions of the victim's employment," including the ability to fire, transfer, or discipline. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998). Rosa's allegations, while spare, are adequate in the context of the relaxed pleading standards in employment discrimination cases to plausibly allege that Murauskas had sufficient authority over Rosa to adversely affect the terms and conditions of her employment. To be sure, Rosa will have to adduce such evidence to prevail on summary judgment or at trial, but it suffices for present purposes to observe that it is certainly plausible that Murauskas exercised such a degree of authority over Rosa. *See, e.g., Vilarreal v. Dart*, No. 12 C 8744, 2016 WL 1212365, at *6 (N.D. Ill. Mar. 29, 2016) (correctional officer's disciplinary write-ups could qualify as adverse employment actions if accompanied by a negative employment action, such as a demotion). This is a fact-intensive inquiry; having alleged sufficient facts to put the defendants on notice that she

asserts that Murauskas was vested with that degree of authority over her employment, it remains for discovery to determine whether there is evidence to prove the allegation.

Even if evidence fails to support a finding that Murauskas was Rosa's supervisor—in other words, that he was simply another employee—the Court may still find a basis for employer liability "if the employer was negligent in failing to discover or remedy the harassment." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004), overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). That appears to be the case here. According to Rosa's allegations, in addition to her own allegations, the Board had received a complaint from another co-worker regarding an off-duty incident of sexual harassment by Murauskas. Rosa also contends that the Board referred her complaint to the OAE, which conducted a faulty investigation and ultimately found that Murauskas did not violate the sexual misconduct policy. There is no mention of other remedial measures the Board took following Rosa's formal complaint, such as ensuring the two officers were separated at work. *C.f. Lapka v. Chertoff*, 517 F.3d 974, 985 (7th Cir. 2008) ("[T]aking effective steps to physically separate employees and limit contact between them can make it distinctly improbable that there will be further harassment.") (internal quotations omitted); *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794 (5th Cir. 1994) (finding employer took appropriate remedial measures by conducting a thorough investigation, including interviewing witnesses, and transferring the alleged harasser to a different shift). There is, then, a plausible basis for the Board's liability due to its failure to properly investigate and remedy the harassment. As such, Rosa's hostile work environment claim moves forward and the defendants' motion to dismiss this claim is denied.

### B. Sexual Harassment against Murauskas under Section 1983 (Count VII)

Rosa also submits that she is entitled to relief from Sergeant Murauskas for his alleged sexual harassment, as Section 1983 provides a parallel remedy to sexual harassment claims under the Fourteenth Amendment.[9] *See generally Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir. 1986). The elements needed to establish Title VII and Section 1983 hostile work environment claims overlap, with the added wrinkle that the plaintiff must show the defendant acted under color of state law. *Wazny v. City of Chicago*, No. 17 C 6871, 2019 WL 1754054, at *3 (N.D. Ill. Apr. 19, 2019). "[A]cts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Valentine v. City of Chicago*, 452 F.3d 670, 682-83 (7th Cir. 2006). As a result, any action taken by a supervisor is imputed to the state entity and will be considered an action "under color of state law." *Id.* at 683. This theory of liability thus hinges on whether Murauskas was Rosa's supervisor. As discussed above, the complaint adequately pleads that he was and so Rosa's sexual harassment claim against Murauskas also survives the motion to dismiss.

## IV. Sex Discrimination

### A. Title VII Liability of the Board (Count II)

As discussed at the outset, to plead sex discrimination under Title VII, a plaintiff's complaint "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson*, 758 F.3d at 827 (internal quotations omitted). Materially adverse employment actions are those that impact the "terms and conditions of employment," including termination, demotion, or loss of pay. *Whittaker*, 424 F.3d at 647-48.

---

[9] Rosa frames Murauskas's liability under Section 1983 in the context of her broader sexual harassment claim, but Section 1983 also provides yet another plausible basis for liability based on the August 24, 2017 patrol ride claim.

Though the Court objectively evaluates whether an employment action is adverse, it will look to the specific context and circumstances at issue in making its determination. *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). Rosa alleges four materially adverse actions on behalf of the Board: issuing disciplinary action, its implied authorization for Murauskas to file a defamation suit against her, failure to take remedial or preventative action, and conducting and/or relying on a biased investigation.

For starters, several of the acts alleged to constitute adverse employment actions are time-barred. Unlike the hostile work environment claim, acts of discrimination do not constitute a continuing action that permits consideration of acts that occurred outside of the limitations period. Accordingly, any action Rosa alleges must have occurred post-November 24, 2017 to be actionable. That rules out the specific disciplinary action that could most easily qualify as materially adverse—Rosa's five-day suspension in October 2017 for being out of uniform. *See Whittaker*, 424 F.3d at 647 (finding three-day unpaid suspension would constitute an adverse employment action). It similarly rules out the disciplinary write-up by Murauskas in May 2017 (whatever the result of that write-up may have been).

As for Murauskas's defamation suit, the complaint contains no basis to support an inference that the suit was filed because Rosa is a woman; rather, the clear inference to be drawn from the complaint is that the suit was filed in retaliation for Rosa's filing of an EEOC charge. As such, it is relevant to her retaliation claim, but does not support her sexual discrimination claim. Similarly, the Board's responsibility for the allegedly shoddy OAE investigation lacks relevance to Rosa's claim of discrimination. The quality of the investigation bears on the retaliation claim and, as discussed above, is a relevant factor in assessing its potential liability for a hostile work environment, but the complaint suggests no basis on which it is plausible to conclude that the

21

Board arranged for a shoddy investigation for a discriminatory purpose—that is, because Rosa is a woman.

And finally, even under the minimal pleading burden prevailing in employment discrimination cases, a plaintiff is required to identify a specific adverse action (or actions) taken by the defendant employer. See *Luevano*, 722 F.3d at 1028 (requiring the pleading of "a (specified) adverse employment action against the plaintiff"). Even the bare bones pleading affirmed in *Tate* included an allegation identifying the specific adverse action and the date on which it occurred. 809 F.3d at 345 (discharge on specific date). With the exception of alleging that the Board caused or authorized the filing of Murkauskas' defamation suit (which, again, was plausibly retaliatory but not discriminatory), Rosa has not done even that much. She identifies no specific disciplinary action taken against her after filing her complaint with the Board, no specific remedial action the Board failed to take, and no specific errors or omissions in the OAE investigation. As such, the complaint provides no basis to assess whether these generic assertions can plausibly be deemed adverse employment actions. Nor does the complaint provide adequate notice to the Board as to what conduct, or omission, undergirds this claim. These reasons, taken together, require dismissal of Rosa's sex discrimination claim. To the extent that Rosa has also asserted a sex discrimination claim against Murauskas individually under Section 1983, that claim fails as well.

### B. Illinois Civil Rights Act (Count V)

Rosa's theory of liability under the Illinois Civil Rights Act fails for the same reason. The Illinois Civil Rights Act provides a parallel state law remedy to Title VII for discrimination claims. 740 ILCS 23/5. Without a materially adverse employment action, Rosa cannot establish a viable theory of liability under this count.

**V. Retaliation**

**A. Title VII (Count III)**

Title VII prohibits employers from retaliating against employees who engage in a statutorily protected activity. 42 U.S.C. § 2000e-3(a). To make a *prima facie* showing of retaliation, a plaintiff must demonstrate that she engaged in a statutorily protected activity, which caused her employer to take a materially adverse action. *Mollett v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). "Materially adverse" is more expansive in retaliation claims than in sex discrimination claims—it encompasses actions that "might dissuade a reasonable worker from making or supporting a charge of discrimination," *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1106-07 (7th Cir. 2012) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)), even if they do not materially change the terms and conditions of employment.

Rosa alleges that her refusal of Murauskas's sexual advances and complaint to the Board were protected activities under Title VII. There is debate about whether resistance to sexual advances qualifies as protected activity under the statute,[10] but it is not necessary to resolve that question here because, regardless, Rosa's formal complaint to the Board qualifies as a protected activity under Title VII because it alleged sex-based harassment. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (holding that an official complaint qualifies as a statutorily protected activity if the complaint "indicate[s] the discrimination occurred because of sex" or another protected class).

---

[10] There is a circuit split on this question. *See Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008). This district is divided as to whether refusing sexual advances qualifies as a protected activity under Title VII, though the majority view is that refusal of sexual advances alone is not a statutorily protected activity. *Doe v. Trp Acquisition, Inc.*, No. 16 C 3635, 2016 WL 3671505, at *2 (N.D. Ill. July 11, 2016) (collecting cases).

In retaliation, she contends, the Board failed to take remedial measures, performed an inadequate investigation, denied her training, denied her transfer request, issued unwarranted discipline, and impliedly authorized Murauskas's defamation suit. Some of the actions Rosa cites as retaliatory do not constitute materially adverse actions, but she has adequately pleaded others that suffice to allow her retaliation claim to go forward against the Board under Title VII.

The Court agrees with the Board that neither the Board's failure to take remedial measures nor its inadequate investigation are materially adverse actions on which a Title VII retaliation claim may rest. Beyond the lack of specificity with respect to these matters, which the Court has already addressed above, myriad other courts have found, and this Court agrees, that these actions would not deter a reasonable employee from filing a complaint of discrimination. *See Revak v. Miller*, No. 7:18-cv-206-FL, 2020 WL 3036548, at *9 (E.D.N.C. June 5, 2020) (failure to remedy alleged sex-based harassment did not constitute an adverse employment action); *Brown v. Dignity Health*, No. CV-18-03418-PHX-JJT, 2020 WL 3403088, at *7 (D. Az. June 19, 2020) (inadequate investigation is not an adverse employment action under Title VII); *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) (failure to investigate does not amount to a materially adverse action that will support a Title VII retaliation claim).

The Court cannot, however, categorically exclude, as a matter of law, several of the other putative adverse actions Rosa alleges were taken in retaliation for her complaint to the Board. Denial of training opportunities and denial of a transfer are acts that plausibly may, in some cases, deter employees from speaking out about sexual harassment in the workplace. So too the prospect of receiving unwarranted discipline. But here again, the complaint fails to provide any specificity about the acts encompassed by these generic descriptions. The Court agrees that the absence of specific allegations about the alleged lost opportunities and disciplinary action precludes reliance

on these acts to support the plausibility of Rosa's retaliation claim. Even under the minimalist standard that prevails in this Circuit, the defendant must identify one or more specific adverse actions in order to adequately plead a claim.

The only allegedly retaliatory action that is adequately identified in the complaint is the filing of the defamation lawsuit by Murauskas. While the plaintiffs decry the absence of fact allegations that provide detail that would support the complaint's allegation that the Board caused or authorized Murauskas to file the allegedly frivolous lawsuit, she is not required to provide detailed facts to establish causation at this juncture. The complaint specifically identifies the alleged adverse action in a manner that provides notice and permits investigation as to the Board's involvement (or lack of involvement) in the filing of that case. That is sufficient to sustain the plausibility of the retaliation claim against the Board.

**B. Section 1983 – First Amendment retaliation against Murauskas (Count VII)**

Rosa also maintains that Murauskas is liable for retaliation for her complaint to the Board under the First Amendment, enforceable through Section 1983. Compl. ¶ 72. To prevail on a First Amendment retaliation claim, the plaintiff must identify a specific deprivation suffered that is likely to deter free speech. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Because Rosa's retaliation claim against Murauskas also relies (in part) on the filing of the defamation lawsuit, it too is adequately pleaded.

**C. Illinois Ethics Act (Counts IV and VI)**

Rosa also alleges that the Board and Murauskas violated the Illinois Ethics Act, which provides whistleblower protection to state employees. Because her retaliation claim against the Board and Murauskas survives, there is no need for the Court to address the viability of her retaliation claim under the Ethics Act; even if that Act fails as a matter of law, Rosa's retaliation

claim goes forward. Again, Rule 12(b)(6) authorizes only the dismissal of claims, not the rejection of legal theories.[11]

## VI. Respondeat superior and indemnification

Finally, Rosa contends that the Board should be held vicariously liable for Murauskas's violations of the IGVA, Section 1983, and battery under the doctrine of respondeat superior or a state indemnification statute. In *Doe v. City of Chicago*, the Seventh Circuit warned district courts against determining indemnity prior to finding liability. 360 F.3d 667, 672-73 (7th Cir. 2004). There, the court recognized that determining a police officer's scope of employment is challenging and must be undertaken with all the facts at hand. *Id.* at 673. Following the Seventh Circuit's warning, this Court will not weigh in on indemnity until a complete factual inquiry has taken place.

\* \* \* \* \*

For the reasons set forth above, the defendants' motion to dismiss is granted in part and denied in part. Her sex discrimination claim is dismissed and, accordingly, Counts II and V are stricken. The motion is denied as to claims based on the August 24, 2017 patrol ride and her claims for hostile work environment and retaliation.

Dated: December 11, 2020

John J. Tharp, Jr.
United States District Judge

---

[11] There is not a great deal of case law on this provision, but the Act similarly defines a retaliatory action as a "reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change in the terms or conditions of employment." 5 ILCS 430/15-10.